UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAMES S. FELKNOR                         CIVIL ACTION NO. 10-cv-0397

VERSUS                                   JUDGE STAGG

HERITAGE PROPERTIES, INC., ET AL         MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

James S. Felknor ("Plaintiff") commenced this civil action by filing a complaint that named two defendants: Heritage Properties, Inc. and the Reserve Apartments of Bossier City. The complaint invoked the U.S. Constitution and the Fair Housing Act.

Heritage and Reserve have filed a Motion to Dismiss (Doc. 11) on the grounds that an attempt to serve Heritage was not proper service, and there has been no service on Reserve. Plaintiff is proceeding in forma pauperis, and he recently requested service by the U.S. Marshal. The court granted that request. Service by the Marshal has not yet commenced, and the case is well within the time permitted by Fed. R. Civ. Proc. 4(m) to make service, so dismissal on these grounds is not appropriate at this time.

Heritage and Reserve also argue that the complaint should be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6) because it fails to state a claim on which relief may be granted. For the reasons that follow, it is recommended that the motion be granted as to Heritage and

Reserve. It is further recommended that the court, sua sponte, dismiss all other claims asserted and defendants named in the complaint.

**Plaintiff's Allegations**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Plaintiff alleged that in his original four-page complaint that in March 2010 the manager of the Reserve Apartments instructed Ms. Jerrye Crawford to vacate Apartment 42E "for reasons which are contrary to the rights provided by the Fair Housing Act which protect Ms. Crawford and [Plaintiff] from violations of said Act, against handicapped and disabled persons by refusing to rent her apartment to her any longer and ordering her and her guest to vacate the premises by March 31, 2010." Complaint, ¶ 6. The complaint did not contain any other allegations of fact. It did pray for compensatory damages of $7,777,777, plus punitive damages and attorney fees. Plaintiff also sought a preliminary injunction, which the court denied. Doc. 10.

After the Motion to Dismiss was filed, Plaintiff filed an Amended Complaint (Doc. 16) that must also be considered. The Amended Complaint added a number of defendants, including the Bossier Parish Sheriff, Bossier City Chief of Police, the owner of a towing company, the warden of a Bossier Parish jail, and two individual employees of the apartment complex at issue. Plaintiff also increased his demand for compensatory damages by $70,000,000 to a total of $77,777,777.

Plaintiff alleged that he is a member of a protected group because an administrative law judge declared him disabled in 1998. Plaintiff alleges that he has been under the medical care of the local VA hospital since 1999 and, because of severe pain, he has received prescriptions for Oxycodone and other medications that he takes regularly. Amended Complaint, ¶ 4.

Plaintiff alleges that Ms. Crawford has been a "supplemental care giver" to him since he was determined to be disabled. Plaintiff then sets forth his various health problems ranging from high blood pressure to difficulties related to a stomach stapling procedure. ¶ 5.

Plaintiff next sets forth at length how he came to know Ms. Crawford when he was 17 and she was the sweetheart of his second cousin. Ms. Crawford later married that cousin, but he was killed in a terrible automobile accident in which the cousin was driving and Plaintiff was among the passengers. Ms. Crawford was left a young widow and single mother. She mortgaged all that she had, enrolled in LSU and earned a doctorate degree. Ms. Crawford began working in education.

Plaintiff alleges that he invited Ms. Crawford to move in with him in Shreveport and, in an effort to make her feel welcome, he (without asking) added her name to his lease. Ms. Crawford became an assistant principal at a junior high school in Oil City and was up for promotion to principal when, according to Plaintiff, a morality clause in her contract cost her the promotion. Plaintiff implies that morality clause was invoked because Ms. Crawford had her name on the lease with Plaintiff . The principal job went to "one of the good old

boys" with no experience or education, and Ms. Crawford had to "train him and wipe his nose when he sneezed." ¶ 6.

Plaintiff asserts that this history is why Ms. Crawford refused to have his name on her lease at the Reserve Apartments. He also makes clear that Ms. Crawford "is not the disabled one." Plaintiff then begins to venture into areas of disagreement with apartment management about "changing the rules" after Ms. Crawford had lived there for five years and Plaintiff's unsuccessful efforts to "defuse this situation" by speaking to office employees. ¶ 7.

Plaintiff alleges how he had a conversation with Ms. Kelly Hill in apartment management. Plaintiff explained that he had "been deeply involved" with litigating cases and that being in Ms. Crawford's apartment made that easier for him. He also explained to Ms. Hill that cats had been fighting over a rat outside the building. Plaintiff said that this was not an unusual occurrence because of the rat population at the apartments. Ms. Hill allegedly responded that a neighbor told her that it was Ms. Crawford's cat that caught the rat and that it had been catching rats for a long time. Plaintiff asked how the new neighbor might have seen this incident since she moved in only five days earlier. Plaintiff then talked to that neighbor, and she allegedly said that the description of her remarks was a lie. Plaintiff alleges that he then explained to the new neighbor about the rat infestation problem, showed her three snake skins he had collected from snakes that came into his storage building to catch rats, and pointed out several rat droppings. The very next day, Plaintiff alleges, an exterminator showed up for the first time in six years and began spreading rat poison.

Plaintiff was apparently not happy even with that, because he complains that the poison was spread where children played. ¶ 9.

Plaintiff begins paragraph 10 by stating: "Gentlemen this situation is nothing but some sort of a personal vendetta and I'm not the least aware of why." He goes on to state that it is not his "position to try to prove discrimination." Plaintiff nonetheless invokes the Fair Housing Act and states that it requires accommodation of matters such as doorways that accept wheelchairs and walkers. He adds that the Act may require the modification of rules to satisfy its goals. ¶ 10.

Plaintiff next describes a dispute between him and management regarding why Ms. Crawford did or did not have a month-to-month lease as opposed to a lease for a term such as six months. He complains that the managers are holding personal property belonging to him and Ms. Crawford. Plaintiff alleges that this includes all of his prescription medications, including Oxycodone and Percocet, which he suggests management intends to distribute on the street. ¶ 11.[1]

Plaintiff does not make any specific allegations regarding an arrest, but in paragraph 13 he states that he "didn't expound on any of the incident regarding the cops or the prison"

---

[1] There was another prolific pro se litigant in this court who was treated at the VA Hospital and prescribed Oxycontin or Oxycodone painkillers. He also alleged that his drugs were stolen. He was later arrested for making false claims that his drugs were stolen so that he could obtain additional prescriptions for the strong painkillers. He was also banned from filing any suits in forma pauperis. See Jim Blackwell v. Kakani, 03-cv-2038.

aside from the man who drove him to jail. Plaintiff alleges that the (unidentified) man applied the handcuffs so tightly that he "tried to sever my hand" and then remarked that he hoped he didn't make them too tight. (Plaintiff did allege in Felknor v. Felknor, 10 CV 463, a different case, that he was arrested and jailed for entering the apartment after the eviction.)

**Analysis**

The Fair Housing Act generally makes it unlawful to discriminate with regard to the sale or rental of a dwelling because of race, religion, and other protected characteristics. The Act also makes it unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of either (1) the buyer or renter or (2) a person residing or intending to reside in the dwelling, or (3) any person associated with the buyer or renter. 42 U.S.C. § 3604(f).

To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir.2002).

Plaintiff has not alleged facts to present a plausible claim under the Fair Housing Act. He recites in detail a conflict with the landlord about cats, rats, lease terms, apparent personality conflicts, and other issues that appear to have culminated in Ms. Crawford being evicted. Plaintiff even alleges that "this situation is nothing but some sort of personal vendetta and I'm not the least aware of why." Plaintiff then makes reference to the Fair Housing Act, but he does not articulate any facts that would tend, if fleshed out and proved, to establish an actual violation of the Act.

A plaintiff's obligation to state the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965. Plaintiff has not even set forth the elements of the cause of action. He merely uses the label of the Act and concludes that he is entitled to money and other judicial relief. Thus, Plaintiff has not pleaded a claim under the Fair Housing Act upon which relief may be granted. See Malik v. Continental Airlines Inc., 305 Fed. Appx. 165 (5th Cir. 2008) (affirming Rule 12(b)(6) dismissal of claims of racial and religious discrimination that were similarly conclusory).

Petitioner also invokes the Constitution. The only apparent means of enforcing a Constitutional violation against Heritage and Reserve would be under 42 U.S.C. § 1983. That statute provides a cause of action for a violation of the Constitution, but the plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 108 S.Ct. 2250 (1988). There is no indication in the complaint

that Heritage and Reserve are other than the private entities they represent themselves as in their motion. Accordingly, all constitutional claims against those two defendants should be dismissed.

The same is true with respect to the owner of the towing service named in the caption of the amended complaint. He is obviously a private person. Furthermore, there is no mention of him in the complaint or amended complaint. Plaintiff appears to have named the towing service based on a confusion between what he alleged in this case and what he asserted in a Motion for Release of Property that he filed in Felknor v. Felknor, 10 CV 463, a separate civil action in which Plaintiff complains about his sister and brother taking his late mother's car.

Plaintiff has listed as defendants the sheriff, chief of police, and a warden who may be state actors. He has not, however, alleged in his complaint or amended complaint any specific facts regarding those named defendants. Plaintiff makes only the slightest of reference to "the cops" and an unnamed officer who allegedly applied his handcuffs too tightly. The doctrine of respondeat superior does not apply in Section 1983 cases, so Plaintiff must allege a viable claim against a named defendant based on the acts of the named defendant. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987). Plaintiff has not alleged any

viable claim against these other defendants, so all claims against them should be dismissed sua sponte.[2]

**Warning**

The court noted in an earlier order (Doc. 22) that Plaintiff has filed at least three prior cases, all of which were dismissed pursuant to a defense motion to dismiss or for summary judgment. He now has pending this case and the other case cited above. The undersigned has recommended that both current cases be dismissed on the pleadings. The court warned before, and repeats now, that a plaintiff who is found to have abused the judicial system may have his pauper status denied or be prohibited from filing future actions. Plaintiff is proceeding in forma pauperis, but that will not prevent the court from considering the imposition on Plaintiff of liability for court costs incurred by defendants or an order that he pay monetary sanctions should his claims or filings be found to deserve such a response.

Plaintiff is placed on notice that if he files even one more meritless case, he will likely be banned from filing further civil actions without prior approval from a district judge and payment in full of the $350 filing fee. Other sanctions may also be imposed. Five, free,

---

[2] "A district court may dismiss an action on its own motion under Rule 12(b)(6) as long as the procedure employed is fair." Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). The procedure is fair with respect to the defendants who have not yet appeared because this Report and Recommendation provides Plaintiff with sufficient notice of and opportunity to respond to the possible dismissal of his case. See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (sua sponte invocation of defense in Report and Recommendation satisfied due process).

frivolous cases is enough. Plaintiff's cases have taken away too much of the court's time that could have been devoted to cases that do have merit.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss (Doc. 11) filed by Heritage Properties, Inc. and the Reserve of Bossier City be **granted** and that all claims against them be **dismissed** for failure to state a claim on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that all claims against all remaining defendants be **dismissed**, sua sponte, for failure to state a claim on which relief may be granted.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of April, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE